John E. Sharp, Esq., SBN 085615
LAW OFFICES OF JOHN E. SHARP
24 Professional Center Parkway, Suite 110
San Rafael, CA 94903
Telephone: (415) 479-1645
Facsimile:  (415) 295-7020

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| EDWARD J. COLTEAUX and KARLA COLTEAUX, on behalf of themselves, and as surviving parents of decedent, EDWARD COLIN COLTEAUX, and as successors in interest, Plaintiff,<br><br>vs.<br><br>JAMES HOLMES, AGENT OF U.S. CUSTOMS AND BORDER PROTECTION ("CBP"); UNITED STATES OF AMERICA; AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br>**WRONGFUL DEATH; NEGLIGENCE; BATTERY; DEPRIVATION OF CIVIL RIGHTS (BIVENS CLAIM)**<br><br>**Jury Demanded** |

## INTRODUCTION/NATURE OF THE CASE

1. Plaintiff EDWARD J. COLTEAUX, as surviving parent of decedent, EDWARD COLIN COLTEAUX, and as successor in interest ("Plaintiff") bring this action pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics* 403 U.S. 388 (1971) for violation of PLAINTIFF DECEDENT'S individual constitutional rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, when DEFENDANT JAMES HOLMES (hereinafter "Holmes"), while acting within the course and scope of his employment used unlawful deadly force in shooting and killing DECEDENT on October 9, 2021, notwithstanding that DECEDENT was defenseless, was offering no resistance, had no weapon of any kind, and had not nor was threatening HOLMES, or any third party, with harm, deadly or otherwise. The U.S. Supreme Court, in Bivens, held that a violation of a person's constitutional rights by federal officers, acting

under color of federal law, gives rise to a federal cause of action for damages for the unconstitutional conduct. As such, victims of a violation of the Federal Constitution by a federal officer have a right under Bivens to recover damages against the officer in federal court despite the absence of any statute conferring such a right. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics* 403 U.S. 388 (1971).

2. This civil rights case involves the brazen and lawless killing of DECEDENT Edward Colin Colteaux by JAMES HOLMES, agent of the United States Border Patrol. Any applicable statute of limitations regarding the *Bivens* claim has been equitably tolled, by, without limitation the filing of a state court action in Pima County against Defendants Holmes.

3. This is also an action against the Defendant United States of America under the Federal Tort Claims Act ("FTCA") (18 U.S.C. §2671, et seq.), and this Court has jurisdiction pursuant to 28 U.S.C. §1346(b)(1), for the wrongful death of EDWARD COLIN COLTEAUX by U.S. Customs and Border Protection ("CBP") in Pima County, Arizona.

4. As a direct result of the actions taken by the United States of America, by and through its agents, Edward Colin Colteaux was killed by being shot in the back.

5. In addition to the *Bivens* claims, the claims herein are brought against the Defendant pursuant to the FTCA for money damages as compensation to the statutory beneficiaries of EDWARD COLIN COLTEAUX (hereinafter "Colin" or "decedent") for his wrongful death pursuant to the applicable State of Arizona tort law, A.R.S. §12-611, et. seq.

6. Colin's statutory beneficiaries under Arizona law are Edward J. Colteaux (father) and Karla Colteaux (mother).

7. The claims herein are also brought against the Defendant for money damages for injuries suffered by Edward J. Colteaux, and Karla Colteaux.

8. Each of the above-named plaintiffs have fully complied with the provisions of 28 U.S.C. §2675 of the FTCA.

9. Their respective Standard Form 95s with accompanying documents, previously served upon the Defendant, are attached hereto as **Ex. A** incorporated herein by reference  Said claim also incorporates the police and autopsy reports surrounding Colin's death.

10. Each demand for relief contained in each and every Standard Form 95 is hereby reasserted.

11. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1-10, inclusive, and therefore sues these defendants by these fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff alleges that each of said defendants is negligently or otherwise responsible in damages or any other relief sought under this complaint for the losses sustained by Plaintiff.

## THE PARTIES

12. At all times herein mentioned, Plaintiffs EDWARD J. COLTEAUX and KARLA COLTEAUX were and are, citizens of the United States of America and are the surviving parents of the decedent, EDWARD COLIN COLTEAUX and his successors in interest. Plaintiffs claim damages under both the Federal Tort Claims Act and under *Bivens* for any and all actual, compensatory and punitive damages to which they are entitled by Federal Law including loss of love, aid, comfort and society, loss of the value of decedent's life, decedent's pain and suffering, loss of economic support, funeral and burial expenses, attorney fees and costs according to proof at the time of trial.

13. At all times mentioned herein, the decedent EDWARD COLIN COLTEAUX was a citizen of the United States of America.

14. At all times herein mentioned, Plaintiffs EDWARD J. COLTEAUX and KARLA COLTEAUX, individually as the surviving parents of EDWARD COLIN COLTEAUX, and as successors in interest, may maintain causes of action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics* 403 U.S. 388 (1971) and under the FTCA.

15. Defendant United States of America, through its agency, U.S. Customs and Border Patrol, operates Ports of Entry located throughout the State of Arizona.

16. Defendant United States of America, including. But not limited to its directors, officers, operators, administrator, employees, agents, and staff at the U.S. Customs and Border Patrol, are hereinafter collectively referred to as the "Border Patrol" or "CBP."

17. At all times herein mentioned, Defendant JAMES HOLMES ("Holmes" or "Agent Holmes") is, and was, an investigative or law enforcement officer, as defined in 28 U.S.C. §2680(h), of the United States Bureau of Customs and Border Protection and/or the United States Border Patrol ("CBP"), an agency of the United States, acting within the course and scope of his employment with the United States of America. Defendant HOLMES is sued in his individual capacity as a Federal officer within the meaning and scope of *Bivens v. Six Unknwon Named Agents of the Federal Bureau of Narcotics,*

18. Upon information and belief, and because Plaintiffs have not yet received a response to their FOIA request, Plaintiffs believe that Defendant JAMES HOLMES was reporting to a supervisor, but his or her true identity is currently unknown.

19. At all times relevant to this Complaint, the directors, officers, operators, administrators, employees, agents, and staff were employed by and/or acting on behalf of the Defendant.

20. Furthermore, the Defendant United States is responsible for the negligent acts of their employees and agents under respondeat superior and principles of agency.

## JURISDICTION AND VENUE

21. Plaintiff presents federal claims for relief that arise under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971); under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

22. Plaintiffs also present claims under the Federal Tort Claims Act, 28 U.S.C. §1346(b) and 2671-2680(h).

23. The Court has subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331 (federal question); jurisdiction is also proper under 28 U.S.C. §1346(b)(1), as the damages claimed exceed the minimum amount in controversy of $75,000.00.

24. Venue is proper under 28 U.S.C. §1402(b) in that all, or a substantial part of the acts and omissions forming the basis of these claims occurred in the District of Arizona.

25. Plaintiffs have complied with the Federal Tort Claims Act, as each filed a timely tort claim

26. against Border Patrol Agent James Holmes and the United States Customs and Border Protection (CBP) on October 6, 2023. These claims were denied on January 31, 2024 by the U.S. Customs and Border Protection (CBP). This action is filed within the six-month period set forth in 28 U.S.C. §2401(b).

27. There is a present, real and actual controversy between the parties, and Defendant's actions were the proximate cause of the death of Plaintiffs' son.

28. Plaintiffs and their son have suffered significant damages, in an amount to be proven at trial.

## FACTUAL ALLEGATIONS

29. On October 9, 2021, at approximately 9:45p.m., thirty-eight-year-old Edward Colin Colteaux ("Colin") was present with his friends outside at the Day's Inn, located at 665 N. Freeway, Tucson, AZ 85745, which was also near a Denny's restaurant.

30. The clerk at the Day's Inn, Laurel Pavlik, knew Colin from past interactions and was informed that night by a patron that there was a group of people hanging out on the stairs.

31. On information and belief, Ms. Pavlik apparently kicked out Colin and his friends from the Days Inn property. However, she followed the group to the parking lot, where she began screaming at Colin. The two engaged in a verbal argument.

32. The October 9, 2021 argument between Ms. Pavlik and Colin was not the first time that the two had argued. In the past, Colin would simply leave the property after arguing with her.

33. On the night of October 9, 2021, however, James Holmes, his mother (Iliana Holmes) and his girlfriend (Emily Rodgers) were inside the Denny's restaurant next door to the Day's Inn having dinner.

34. James Holmes at all material times herein was, and is, a Border Patrol Special Agent, and was armed with two guns—one being his service weapon.

35. On the night of October 9, 2021, James Holmes exited the Denny's restaurant and went to his car with his girlfriend and mother. On the way to the car, Mr. Holmes' girlfriend, Emily Rodgers, witnessed Colin and Ms. Pavlik arguing in the parking lot.

36. Despite the fact that Colin had no weapon in his hands and was not physically attacking Ms. Pavlik at all, Emily Rodgers (James Holmes' girlfriend) began screaming and yelling that Colin was "going to kill" Ms. Pavlik.

37. At that point, James Holmes exited his car and yelled "Stop!" at Colin. However, before he finished saying "Stop!," Special Agent Holmes shot his service weapon seven times. Multiple bullets his Colin in the back and killed him.

38. This was an unprovoked and unjustified shooting. Mr. Holmes was not in danger himself, and nobody else was in danger of being physically attacked in any way.

39. Immediately after the shooting, Mr. Holmes called U.S. Customs and Border Patrol, and someone from that agency came and picked him up.

40. Mr. Holmes exercised his right on the scene not to make a statement to the police.

41. On April 4, 2023, Colin's parents (Karla Colteaux and Edward J. Colteaux), through their attorney, submitted a FOIA request to the U.S. Customs and Border Control in connection with the October 9, 2021 events described above and concerning James Holmes. To date, no response has been received to that requires.

42. Attached to Ex. A, above, are true and correct copies of the police reports and autopsy report showing that Colin was shot in the back five times by James Holmes, and that this caused his death.

43. On the night of the shooting (October 9, 2021), Mr. Holmes and his girlfriend alleged that Colin was throwing rocks at Ms. Pavlik. However, during the police investigation, it became evidence that these allegations were false.

44. The police department put together a reenactment of that night based on the photographs of the scene and the trajectory of the bullets/other evidence from the scene. From all their investigation, it is evidence that there were no rocks being thrown.

45. The only rocks remotely close to where Colin and Ms. Pavlik were located that night were large, permanent landscaping boulders.

46. Mr. Holmes has stated that he was off duty that night. However, this has not been verified, as the FOIA request has not yet been responded to. Furthermore, even if Mr. Holmes was off duty, the CBP is liable for his actions that night.

47. The CBP handbook and applicable CBP policy states that "In threatening, emergent situations, Authorized Officers/Agents are authorized to use any available weapon, device or technique in a manner that is reasonable and necessary for self-defense or the defense of another person." (See Chapter 1, Section (C)(1) of handbook). The policy handbook also states that the carriage of a CBP firearm "…whether on- or off- duty, is governed by this *Handbook* and applicable CBP policy." (See Chapter 1, Section (B)(1)).

48. CBP issued the service weapon to Mr. Holmes, authorized Mr. Holmes to carry the service weapon while off-duty, and authorized Mr. Holmes to use such service weapon if necessary for the "defense of another." Further, the CBP authorized/permitted Mr. Holmes to use force to control subjects in defense of himself and others. As such, Mr. Holmes was acting within the scope of his duty/duties on the night of October 9, 2021. The CBP failed to control Mr. Holmes and failed to properly train and/or supervise Mr. Holmes.

49. A person holding themselves out in Arizona as possession special knowledge, skill, or expertise must perform according to the standard of care for their profession. *Southwest Auto Painting & Body Repair v. Binsfield,* 183 Ariz. 444 (App. 1995).

50. Further, a defendant's normal practices, policies, and procedure is admissible as to the standard of care. *Vigil v. Herman,* 102 Ariz. 31, 34 (1967) (*citing Stallcup v. Coscarart,* 79 Ariz. 42 (1955)); *Peacock v. Samaritan Health Service,* 159 Ariz. 123, 126-127 (App.1988); *Bell v. Maricopa Medical Center,* 157 Ariz. 192, 195-196 (App.1988).

51. Mr. Homes failed his duty to the public by failing to act in compliance with Customs and Border Protection policy.

52. Alternatively, and regardless of internal policy, Mr. Holmes' conduct that night was negligent and/or reckless. Multiple other, far less deadly, options were available to Mr. Holmes that night if he was concerned for anybody's safety.

53. Further, Mr. Holmes should have, but did not, assessed the situation to determine whether anyone was being physically harmed *prior to discharging his weapon.*

54. Further, Colin posed no threat to the life or safety of others such that such extreme tactics were warranted.

55. By being armed with his service weapon that night, Mr. Holmes had a duty to conduct himself as a reasonable person/reasonable Border Patrol Officer would. Mr. Holmes breached that duty by failing to deescalate the situation and using unreasonable and improper deadly lethal force in shooting Colin without any reasonable basis for doing so.

56. Defendant United States of America is liable to Plaintiffs for the wrongful death of Colin caused by its employee and agent.

57. Plaintiffs may also discover other evidence of negligence and/or recklessness by the Defendants during the course of discovery.

### FIRST CAUSE OF ACTION: WRONGFUL DEATH/SURVIVAL PURSUANT TO THE FTCA BASED ON BATTERY

58. Plaintiffs incorporate by reference and re-alleges each and every allegation set forth in all preceding paragraphs as if fully set forth herein;

59. Plaintiffs are bringing an action under the FTCA against the United States for wrongful death caused by the negligent and wrongful acts of Agent Holmes who, while acting within the course and scope of his employment and while using his service weapon, used unlawful, excessive deadly force in shooting and killing Colin on October 9, 2021 notwithstanding that Colin was defenseless, had no weapon of any kind, and had not nor was threatening Agent Holmes, or any third party, with harm, deadly or otherwise;

60. At all times herein, Defendant Holmes was acting under color of law while employed as a U.S. Customs and Border Patrol Agent. In such capacity, Defendant Holmes used excessive deadly force and intentionally shot Colin on or about October 9, 2021;

61. Agent Holmes shot Colin while acting in the course and scope of his employment with Defendant United States as an investigative and law enforcement officer.

62. Defendant Holmes had a duty to refrain from the use of excessive force. In shooting Colin under the above-described circumstances, Agent Holmes perpetrated a nonconsensual touching of Colin's body which resulted in Colin's death.

63. Agent Holmes intended to cause harm or offensive contact with Colin, or to cause Colin apprehension of an immediate harmful or offensive contact; Agent Holmes actually caused harmful or offensive contact; and Colin suffered damages as a result.

64. The contact by Agent Holmes in shooting Colin would offend a reasonable person.

65. As a direct and proximate result of the wrongful acts and omissions of Agent Holmes, while in the course and scope of his employment, and while using a service weapon, Colin suffered fatal injuries for which Plaintiffs now complain. On information and belief, such acts and omissions fall within the purview of 28 U.S.C. § 2671, et. seq.

66. As a direct and proximate result of the actions of Defendant United States' employee, Agent Holmes, Plaintiffs have suffered the loss of love, aid, comfort, and society of Colin, he having been a loving and devoted son, loss of financial support of Colin, funeral and burial expenses; Colin suffered conscious pain and suffering, loss of value of life to himself; and any and all other damages allowable under the FTCA, for which Plaintiffs seek compensatory damages against Defendant United States.

### SECOND CAUSE OF ACTION: WRONGFUL DEATH/SURVIVAL PURSUANT TO THE FTCA BASED ON NEGLIGENCE

67. Plaintiffs incorporate by reference and re-alleges each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

68. Employees and agents of the United States government, including Border Patrol agents such as Agent Holmes, have a duty not to perform their duties negligently.

69. On October 9, 2021, Agent Holmes had a duty, while acting in the course and scope of his employment with Defendant United States, to not cause personal injury or death through his own wrongful or negligent act or omission. Agent Holmes had a further duty to act with due care including, btu not limited to, following appropriate policies and procedures and to

not allow a situation to develop in which he would through a lack of due care cause the death of another human being.

70. When Agent Holmes shot Colin, such conduct constituted a negligent act, in breach of his duties.

71. Agent Holmes' shooting of Colin was reckless and/or negligent.

72. As a result of the conduct as described herein, the Defendant caused Colin's wrongful death.

73. The Defendant is liable to Colin's survivors for his wrongful death.

74. As a direct and proximate result of the actions of Defendant United States' employee, Agent Holmes, Plaintiffs have suffered the loss of love, aid, comfort, and society of Colin, he having been a loving and devoted son, loss of financial support of Colin, funeral and burial expenses; Colin suffered conscious pain and suffering, loss of value of life to himself; and any and all other damages allowable under the FTCA, for which Plaintiffs seek compensatory damages against Defendant United States

**THIRD CAUSE OF ACTION: WRONGFUL DEATH/SURVIVAL PURSUANT TO THE FEDERAL TORT CLAIMS ACT BASED ON NEGLIGENT HIRING, RETENTION, AND/OR SUPERVISION**

75. Plaintiff incorporates by reference and re-alleges each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

76. The CBP should not have authorized Agent Holmes to carry a service weapon while off-duty without properly training him.

77. It is clear by Agent Holmes' actions that he was not properly trained and/or supervised.

78. As a result of the negligent and/or reckless conduct as described herein, the Defendants caused Colin's wrongful death and therefore caused, and continue to cause, damages to Plaintiffs.

**FOURTH CAUSE OF ACTION: VICARIOUS LIABILITY**

79. Plaintiff incorporates by reference and re-alleges each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

80. At all times relevant to this case, Agent Holmes was employed by and/or acting on behalf of the United States.

81. At all times relevant to this case, the directors, officers, operators, administrators, employees, agents and staff acted within their respective capacities and scopes of employment for the Defendant.

82. The directors, officers, operators, administrators, employees, agents, and staff negligently and/or recklessly, directly and proximately caused Colin's death and the Plaintiffs' injuries, including both acts of omission and acts of commission

83. Vicarious liability as set forth above would attach under the law of the State of Arizona.

### FIFTH CAUSE OF ACTION: FIRST CLAIM FOR RELIEF FOR VIOLATION OF CIVIL RIGHTS UNDER COLOR OF LAW (*BIVENS* ACTION AGAINST DEFENDANT JAMES HOLMES)

84. Plaintiff incorporates by reference and re-alleges each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

85. This claim for relief is brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971), and the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution for the violation of the civil rights of the DECEDENT, Edward Colin Colteaux, when Agent Holmes, while acting within the course and scope of his employment used unlawful deadly force in shooting and killing Colin on October 9, 2021. Colin was defenseless, had no weapon of any kind, and had not nor was threatening Agent Holmes, or any third party, with harm, deadly or otherwise. This claim for relief is to redress a deprivation, under color of authority, statute, ordinance, regulation, policy, custom, practice, or usage of a right, privilege, and immunity secured to PLAINTIFFS and DECEDENT by the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

86. During all times mentioned herein, Agent Holmes acted under color and pretense of federal statutes, ordinances, regulations, policies, practices, customs usages of the United States.

87. On or about October 9, 2021, Plaintiffs and Colin possessed the rights, guaranteed by the

Fourth Amendment of the United States Constitution, to be free from unreasonable seizures and excessive force by law enforcement officers without probable cause as well as the right to be free from unreasonable searches and seizures of his person and liberty interest to be free from unlawful taking of his life.

88. On or about October 9, 2021, Colin possessed the rights guarantee by the Fifth Amendment of the United States Constitution, to not be deprived of life and liberty without due process of law, including but not limited to the right not to suffer physical harm from persons acting under color of law that is intentionally or wantonly inflicted or which is accomplished with deliberate, reckless, or callous indifference to Colin's constitutional rights.

89. On or about October 9, 2021, Colin possessed the rights guaranteed by the Eighth Amendment of the United States Constitution, to not be subjected to cruel and unusual punishment from persons acting under color of law that is intentionally or wantonly inflicted or which is accomplished with deliberate, reckless, or callous indifference to Colin's constitutional rights.

90. On or about October 9, 2021, Colin possessed the rights, guaranteed by the Fourteenth Amendment which prohibits the taking of life, liberty, or property without due process of the law.

91. On or about October 9, 2021, Colin possessed the rights, guaranteed by the Equal Protection clause and the Due Process clause of the United States Constitution.

92. On or about October 9, 2021, Agent Holmes, acting under color of Federal law as an U.S. Border Patrol Agent, intentionally deprived Colin of his Fourth Amendment constitutional right to be free from unreasonable seizure by subjecting him to excessive use of force by inflicting lethal gunshot wounds upon Colin's person.

93. On or about October 9, 2021, Agent Holmes, in doing the acts alleged, violated Colin's rights guaranteed under the Fifth Amendment to the Constitution of the United States. While acting under the color of Federal law as an U.S. Border Patrol Agent, Agent Holmes was motivated by evil intent and conduct in which he engaged in by use of excessive force

in lethally shooting Colin. Said conduct involved reckless or callous indifference to Colin's Constitutional rights, thereby entitling Plaintiffs to punitive and exemplary damages in an amount according to proof.

94. At the time that Colin was fatally shot, Agent Holmes was not in danger of fatal or bodily harm from Colin or anyone else; nor was Colin engaged in any assaultive behavior toward any other person or persons.

95. In fatally shooting Colin, Agent Holmes acted intentionally and used unreasonable and excessive force with the purpose of causing harm to Colin without legal justification.

96. The execution style shooting by Agent Holmes was entirely unjustified by any actions of Colin and said shooting constituted an unreasonable and excessive use of force in violation of Colin's guaranteed rights under the Fourteenth Amendment of the United States Constitution.

97. Agent Holmes' actions violated the Fourth Amendment's prohibition against seizures with excessive and unreasonable force.

98. Agent Holmes' unreasonable use of force caused injury and damage to Colin, ultimately resulting in his death.

99. In fatally shooting Colin, Agent Holmes acted intentionally, maliciously, and used unreasonable and excessive force, with the purpose to cause harm to Colin without legal justification. Agent Holmes' actions were unnecessary to achieve any legitimate law enforcement objective.

100. Agent Holmes' actions were grossly excessive and deliberately indifferent, and shocked the conscience, in violation of the substantive due process component of the Fifth Amendment.

101. Agent Holmes, and Does 1-10, and each of them, acted specifically with the intent to deprive Colin of *inter alia* the following rights and privileges guaranteed under the United States Constitution: freedom from unreasonable seizures, in the form of excessive use of force; freedom from a deprivation of life, liberty, or property without due process of law;

freedom from punishment prior to conviction for any crime; and equal protection under the law.

102. Agent Holmes subjected Colin to the aforementioned deprivations by either actual malice or deliberate indifference and disregard of Colin's civil rights, and his life.

103. As a direct and proximate result of the aforementioned acts of Agent Holmes, Plaintiffs and Colin suffered damages in the form of conscious pain and suffering, the loss of the value of Colin's life to himself, and the loss of aid, comfort, love and society; and for special damages for the loss of economic support and funeral and burial expenses, for which Plaintiffs seek compensatory damages against Defendant Holmes.

104. Defendant Holmes' aforementioned acts were reckless and demonstrated a callous indifference to Colin's federally protected rights, entitling Plaintiffs to recover punitive damages against Defendant Holmes individually.

**PRAYER FOR RELIEF:**

WHEREFORE Plaintiff respectfully prays that this Court:

**AS TO THE CLAIMS UNDER THE FTCA:**

1. Award Plaintiffs general and special damages for the loss of Edward Colin Colteaux, pursuant to A.R.S. § 12-613 and Arizona law.

2. Award Plaintiffs compensatory general damages, including but not limited to, for loss of love, aid, comfort and society of Edward Colin Colteaux.

3. Award Plaintiffs special damages, including but not limited to, for loss of financial support, funeral and burial expenses in an amount according to proof at the time of trial.

4. For all other damages allowable under Arizona law; and

5. Award Plaintiff reasonable attorneys' fees and costs.

6. For any other relief which this Court deems appropriate.

**AS TO THE BIVENS ACTION:**

7. Award Plaintiffs compensatory general damages, including but not limited to, Decedent's conscious pain and suffering, the loss of love, aid, comfort and society, and the loss of the value of the Decedent's life to himself.

8. Award Plaintiffs special damages, including but not limited to, the loss of economic support by Decedent and the funeral and burial expenses in an amount according to proof at the time of trial.

9. Award Plaintiffs exemplary damages, against Defendant James Holmes, for the intentional acts described above or for those done recklessly or with deliberate indifference, in an amount sufficient to deter and to make an example

10. Award Plaintiff compensatory damages adequate to satisfy Plaintiff in the amount owed for Defendant's violation of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

11. Award Plaintiff compensatory damages adequate to satisfy Plaintiff in the amount owed for Defendants' violations of the Due Process Clause of the Fourteenth Amendment.

12. Award Plaintiff compensatory damages adequate to satisfy Plaintiff in the amount owed for Defendants' violations of the Fourth Amendment.

13. Award Plaintiff compensatory damages adequate to satisfy Plaintiff in the amount owed for Defendants' violations of the Due Process Clause of the Fifth Amendment.

14. Award Plaintiff compensatory damages adequate to satisfy Plaintiff in the amount owed for Defendants' violations of the Eighth Amendment.

15. Award Plaintiff reasonable attorneys' fees and costs, including those permitted by a *Bivens* Action.

16. Award Plaintiff such other relief available under the law that may be considered appropriate under the circumstances, including but not limited to, other fees and costs of this action to the extent allowed by the law.

Dated:   July 30, 2024               /s/ John E. Sharp
                                     John E. Sharp, Esq.
                                     Attorney for plaintiffs
                                     Edward J. Colteaux and Karla Colteaux